UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HP INC., § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:20-CV-02529 |
| § | |
| AMERISOURCE FUNDING, INC., § | |
| § | |
| Defendants. § | |

## MEMORANDUM & ORDER

The Court previously held a hearing on Plaintiff's and Defendant's Cross Motions for Summary Judgment (Docs. 27, 50). At that hearing, the Court took the submissions under advisement.

For the reasons set forth below, the Court now **GRANTS** Plaintiff's Motion for Summary Judgment as to money had and received, **DENIES** Defendant's Motion for Summary Judgment as to affirmative defenses of bona fide payee and discharge for value, **DENIES** Defendant's Motion for Summary Judgment as to money had and received and **DENIES AS MOOT** all remaining cross motions on breach of contract, civil theft, and conversion.

### I.  BACKGROUND

Plaintiff HP, Inc. ("HP") is an information technology company that operates worldwide. (Doc. 17 ¶ 6). HP contracts with multiple vendors and previously contracted with KLS Air Express, Inc. to provide freight services for HP. *Id.* Defendant Amerisource Funding, Inc. ("Amerisource") is a factoring company that takes assignment of a borrower's accounts receivable. *Id.* at ¶ 7. Amerisource therefore becomes entitled to two different types of payments from its customers: (1) payments from purchased invoices, known as "factored accounts" and (2) payments from unpurchased invoices, which are known as "collateral invoices" because they secure

1

Amerisource's investment in the purchased accounts. (Doc. 50 at 4). At relevant times, Amerisource had a valid assignment of KLS' accounts receivable, including amounts HP owed to KLS. (Doc. 17 ¶ 7).

KLS became insolvent in 2019, declaring bankruptcy shortly thereafter. This led to HP holding certain funds because Amerisource and various subcontractors all demanded payment of the money HP owed to KLS. *Id.* at ¶ 8. On December 16, 2019, HP and Amerisource entered into a settlement agreement in which HP agreed to pay Amerisource $628,981.05 for invoices due to KLS, and Amerisource agreed to indemnify HP against any third-party claims to the funds. *Id.* A list of the KLS invoices and amounts was included as "Exhibit A" to the agreement. *Id.* In January 2020, pursuant to the settlement agreement, HP made that one-time payment to Amerisource by check. (Doc 17 at ¶ 10).

HP alleges that its relationship with KLS ended before the settlement agreement was effected. (Doc 44:1-5). Thus, HP claims that the agreed-upon amount in the settlement agreement encompassed all outstanding KLS invoices owed by HP that Amerisource had a claim to and resolved all amounts due. (Doc 17 at ¶ 9). As proof, HP offered affidavit evidence in the form of statements of accounts and invoices through Trax, HP's and KLS's third party processing vendor and freight cost auditor. (Doc 44:1-5).

Amerisource initially disagreed with HP about amounts owed, alleging that based on "reports from KLS", at the time of the negotiation and execution of the settlement agreement, Amerisource believed that HP owed payment of large, additional amounts for collateral invoices. (Doc. 44:1 ¶ 5). In a declaration, Amerisource's general counsel also claimed that "at no time during settlement negotiations with HP did any representative of HP inform me of HP's purported position (only recently espoused in the lawsuit) that Collateral Invoices did not exist, or HP's

recent position that no further payments were owed by HP on Collateral Invoices." (Doc. 44:8 ¶ 2-3). Ultimately, Amerisource claimed that as of March 16, 2020, KLS owed Amerisource $1,090,898.02 on Collateral Invoices, and that Amerisource, in good faith, believed that HP owed vast amounts to KLS, and thus to Amerisource. (Doc. 50 at 7).

In March 2020, HP implemented a new invoice-processing system and began a migration process of its accounting information. *Id.* at ¶ 11. As part of the migration, HP had to reverse approximately 1,500 invoices from KLS. *Id.* Due to technical issues during the migration, two payments were made in error. As a result, HP paid Amerisource in the amount of $1,315,067.77. *Id.* at ¶ 15. The first erroneous payment was made in March of 2020 and amounted to $632,156.72, and the second was made in April of 2020 for $682.981.05. *Id*. Also, a small additional payment of $400.00 shortly followed the initial March 2020 payment. *Id*. HP claims that Amerisource initially seemed willing to return the funds, but ultimately refused to do so. *Id.* at ¶¶ 16-17. HP sent a formal demand to Amerisource for the money, but the most Amerisource would offer was to return the second erroneous payment in the amount of $682,981.05. *Id.* at ¶ 18. HP claims that Amerisource was holding both erroneous payments in error, using the return of the second payment as a malicious bargaining chip to keep the first payment. (Doc 54 at 4).

Amerisource claims that it had a good faith assumption that the first erroneous payment of $632,156.72 represented payment of Collateral Invoices owed by KLS which amounted to $1,315,067.77 at the time. (Doc. 50 at 7). In reliance on that assumption, Amerisource alleges it made a payment to Catalyst, a third-party participant in the KLS account, for that party's interest in the March-2020 Payment. *Id*. at 8. Amerisource then held the second erroneous payment of $682,981.05 in a suspense account where it would not be depleted, pending discussions with HP and release from HP and KLS's bankruptcy trustee. *Id*. at 8.

In July 2020, HP filed the present suit. (Doc. 1). On June 7, 2021, Amerisource returned the second erroneous payment in full to HP, but retained the March 2020 payment. (Doc. 50 at 9). It is now undisputed that Plaintiff HP did not owe Defendant any amounts not captured in "Exhibit A" as attached to the December 16, 2019, settlement agreement. (Tr. 28:2-3; 28:14-16).

## II. DISCUSSION

### A. Money Had and Received

Texas follows the ordinary principles of common law with respect to money had and received claims. *Bank of Saipan v. CNG Fin. Corp.,* 380 F.3d 836, 840 (5th Cir. 2004). The inquiry is as follows:

> The question, in an action for money had and received, is to which party does the money, in equity, justice, and law, belong. All plaintiff need show is that defendant holds money which in equity and good conscience belongs to him. Again, it has been declared that a cause of action for money had and received is less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely at the inquiry, whether the defendant holds money, which belongs to the plaintiff.

*Staats v. Miller*, 243 S.W.2d 686, 687–88 (1951) (quoting 58 C.J.S., Money Received § 4a, and *United States v. Jefferson Elec. Mfg. Co.*, 291 U.S. 386, 402–03, (1934) (internal quotations omitted)). *See also Hunt v. Baldwin*, 69 S.W.3d 117, 132 (Tex. App.---Houston [14th Dist.] 2001, no pet.).

Here, HP argues that (1) the settlement agreement fully and finally resolved Amerisource's claims as to HP; (2) Amerisource was fully paid by HP under the settlement agreement; (3) once Amerisource received the settlement payment, it was not expecting any additional payment from HP; (4) there were no other amounts owing from HP to KLS or from HP to Amerisource other than those already covered by the settlement agreement;

4

and (5) both the March 17, 2020 payment for $632,156.72 and the April 6, 2020 payment for $682,981.05 were made in error and by mistake. (Doc. 27 at 16-17).

Amerisource's defenses are as follows: (1) that it benefits from the bona fide payee defense as well at the antecedent defense of discharge for value; (2) that Amerisource changed its position in reliance on the March 2020 payment; (3) that HP should bear the loss as the sole responsible party for the erroneous payments; and (4) that Amerisource was not unjustly enriched by the March 2020 payment. (Doc. 50 at ii).

Amerisource has never disputed that it was fully paid by HP under the settlement agreement. However, in its summary judgement briefing, Amerisource urged that it was not unjustly enriched because it was entitled to payment from HP on any non-settled invoices owed to KLS, and because the outstanding amounts on the KLS account exceeded the amount of the March 2020 payment. *Id*. at 18.

Key to our inquiry is the fact, that during a September 22, 2021 motion hearing, Amerisource admitted for the first time on the record that there were no amounts owing from HP to Amerisource that were not accounted for in the settlement agreement. (Tr. 28:2-3; 28:14-16). Therefore, Amerisource implicitly agreed that the disputed payments that arrived in March and April of 2020 were overpayments.

This Court finds and holds that those overpayments amount to unjust enrichment. A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Here, where Amerisource took undue advantage of the failure of HP's invoice processing system by retaining funds that HP transmitted in error, Amerisource was unjustly enriched.

5

Nevertheless, Amerisource argues that it is entitled to keep the March 2020 payment for two reasons. First, Amerisource claims it held a good faith belief that it was a bona fide payee receiving funds owed by HP on KLS' collateral invoices. Second, Amerisource claims that when it paid out to Catalyst—a third-party, 50-50 participant in the KLS account—Amerisource did so in detrimental reliance on the March 2020 payment. (Doc. 50 at 19).

In support of its bona fide payee argument, Amerisource cites numerous cases. Tellingly, Amerisource fails to cite even a single case in which a defendant was unjustly enriched and still prevailed on a bona fide payee defense.

For example, Amerisource relies on *In re Deepwater Horizon* for the proposition that a bona fide payee who accepts funds in satisfaction of payee's valid claim as a creditor is not liable to repay the funds. 845 F.3d 634, 637 (5th Cir. 2017). However, in *Deepwater*, the bona fide payee's claim was deemed valid where "that creditor [wa]s not unjustly enriched by retention of the payment." *Id*. at 640. The contested payment in *Deepwater* discharged an unconditional, bona fide obligation, which meant that defendant was not liable in restitution. *Id*. Here, where Amerisource was not owed further payments by HP, Amerisource is unjustly enriched by retaining the payments.

Further, Amerisource attempts to cite *Equilease Corp v. Hentz* for the proposition that it is "patently unfair to require an innocent payee who has received and used the money to satisfy a debt to repay the money." 634 F.2d 850, 853 (5th Cir. 1981) However, in *Equilease*, the Fifth Circuit foregrounded the fact that the disputed payment was not gratuitous; the funds were paid out to a creditor who ended up not having a valid lien, but that creditor subsequently paid out those mistakenly received funds in satisfaction of a

6

valid debt owed by plaintiff. *Id*. at 854. In sum, plaintiff lost no money and defendant was not unjustly enriched. *Id*. at 855. So, the present matter is distinguishable because the disputed funds were not used to pay down a valid debt owed by HP; HP lost money and Amerisource was unjustly enriched.

*Equilease* also explores Amerisource's final equitable defense—namely that Amerisource detrimentally relied upon the disputed March 2020 payment when it paid out to Catalyst. The case notes that "[c]hange of position or detrimental reliance is also a defense to an action to recover money paid by mistake *if the circumstance render it inequitable to require restitution*." *Id*. (Emphasis added). Weighting of the equities requires an analysis of the factual circumstances. In *Equilease*, the Fifth Circuit found that Defendant had "irrevocably" changed its position in detrimental reliance on the disputed payment by crediting a third-party Defendant with the payment mistakenly made by Plaintiff. *Id*. at 854. The detrimental reliance was irrevocable because the payment to the third-party defendant was credited as partial payment of debt and thus irretrievably reduced the amount that the third-party owed in a final judgment of foreclosure. *Id*. In these circumstances, the Fifth Circuit found that it would not be equitable to require defendants to make restitution. *Id*.

The *Restatement (First) of Restitution* § 142 (1937) offers further guidance on when it is equitable to require restitution: "Where money has been paid which the payee has used for the payment of debts incurred prior to its receipt, such payment of debts does not constitute a change of circumstances which would prevent restitution by him." This principle—that reliance premised on payment of prior debts does not prevent restitution—was illustrated in *Fed. Ins. Co. v. Smith*, 144 F. Supp. 2d 507, 524–25 (E.D. Va.

7

2001), *aff'd*, *Federal Ins. Co. v. Smith*, 63 F. App'x 630 (4th Cir. 2003). The court explained, "in these instances, 'repayment will not normally cause the recipient any net loss—he will merely be returned to *status quo ante*.'" Id.

Here, Amerisource claims that it used the March 2020 disputed payment to pay Catalyst, a third-party participant in the KLS account. However, this payment to Catalyst satisfied a debt Amerisource had incurred prior to its receipt of the March 2020 payment; as such, per the *Restatement (First) of Restitution* § 142 (1937), Amerisource's reliance on the March 2020 payment does not prevent full restitution to HP. If Amerisource is compelled to repay HP, Amerisource will merely be returned to *status quo ante*.

Furthermore, as HP pointed out, Amerisource's contract with Catalyst specifically provided for reimbursement in situations such as these, reading in relevant part:

> "[Catalyst] shall reimburse AMERISOURCE for any sums received by AMERISOURCE and later distributed to [Catalyst] which AMERISOURCE is later called upon to return to seller or to any account party for any reason, including, but not limited to, sums paid that were preferential or fraudulent conveyances under the Federal Bankruptcy Code or other similar law."

(Doc. 27-22 ¶ 10). Here, where Amerisource is entitled to reimbursement from Catalyst, Amerisource's supposedly detrimental reliance on the March 2020 payment does not at all appear to be irrevocable.

In sum, the undisputed facts are that (1) Amerisource was fully paid by HP under the settlement agreement; (2) there were no other amounts owing from HP to KLS or from HP to Amerisource other than those already covered by the settlement agreement; (3) both the March 17, 2020 payment for $632,156.72 and the April 6, 2020 payment for $682,981.05 were made in error; (4) Amerisource used the March 2020 payment to pay

down a prior debt to Catalyst; and (5) Amerisource's contract with Catalyst specifically provided for reimbursement to Amerisource if Amerisource had to return funds to a seller or any account party "for any reason." The equities unambiguously favor HP.

Money had and received is an equitable claim ". . . aim[ing] at the abstract justice of the case, and look[ing] solely at the inquiry, whether the defendant holds money, which belongs to the plaintiff." *Staats*, 243 S.W.2d at 687–88. The undisputed facts show that Amerisource holds money belonging to HP. And the law does not allow for a bona fide payee or discharge for value defense where a valid debt does not exist and defendant is unjustly enriched as a result of overpayment. Amerisource's final assertion that HP should bear the loss as the sole party responsible for the erroneous payments is well taken, but, without more, it cannot tip the equitable scales.

### B. REMAINING CLAIMS

Having granted Plaintiff's Motion for Summary Judgment based on money had and received, the Court **DENIES AS MOOT** all remaining cross motions on breach of contract, civil theft, and conversion.

### III. CONCLUSION

For the reasons described above and as stated on the record at the September 22, 2021 hearing, the Court now **GRANTS** Plaintiff's Motion for Summary Judgment as to money had and received, **DENIES** Defendant's Motion for Summary Judgment as to affirmative defenses of bona fide payee and discharge for value, **DENIES** Defendant's Motion for Summary Judgment as to money had and received, and **DENIES AS MOOT** all remaining cross motions on breach of contract, civil theft, and conversion.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 14th day of October, 2021.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE